IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VALERIE T. FILAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 04 C 4679 |
| | ) | |
| CHICAGO SCHOOL REFORM BOARD | ) | HONORABLE CHARLES R. NORGLE |
| OF TRUSTEES, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the court is Defendant's Motion for Summary Judgment brought pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, Defendant's Motion for Summary Judgment is granted.

### I. BACKGROUND[1]

**A. Facts**

This case arises out of Plaintiff Valerie Filar's termination from her position as a substitute teacher at Foreman High School, in Chicago, Illinois. In 1992, Valerie Filar ("Filar") began working as a full-time basis substitute teacher ("FTB") at Foreman High School, in Chicago, Illinois. An FTB is a teacher who is assigned to one school to teach full time. FTBs do not have tenure track, and do not have any seniority rights over other appointed teachers.

---

[1] The court takes the undisputed facts from the parties' Local Rule 56.1 Statements, and notes disputed facts within the text.

1

According to Defendant Chicago School Board (the "Board"), an "appointed teacher" is a certified teacher appointed to a position who begins the process of acquiring tenure. Appointed teachers do not compete with FTBs for teaching positions.

In 1995, Filar began to experience hip problems and was later diagnosed with severe osteoarthritis. This ailment prevent Filar from walking long distances; however, she did not require the use of a cane or other walking device.

During the 1998-1999 school year, enrollment of Polish-bilingual students at Foreman decreased, and as a result, one teaching position would be eliminated for the upcoming academic year. The Board alleges that instead of closing one of the teaching positions, a principal could choose to remove the Polish-bilingual designation from one of the FTB designated teachers. Principal Garvey, of Foreman High School, stated that based on his observations of the FTB teachers, he felt that Filar should be removed from the program. Principal Garvey needed the approval for this decision from a member of the Human Resources ("HR") staff. Stephen Heller ("Heller"), an HR specialist, reviewed Garvey's decision and analyzed whether Filar's removal complied with Board policy. Heller reviewed Filar's certifications and endorsements to see if she had seniority over other FTBs. According to Heller, at the time of Filar's transfer, she did not have seniority over any other FTBs in the areas in which she was eligible to teach, which included Polish.

On September 27, 1999, the Board notified Filar that she was displaced from the FTB teaching pool. Filar returned to Foreman as a cadre substitute teacher for two weeks. The Board states that the "cadre" was a group of teachers who where displaced from schools through the Chicago Public Schools ("CPS") system, and who performed day-to-day substitute teaching work

2

at whichever school the Board assigned them to on a daily basis. The substitute center told Filar that Foreman would no longer accept her to teach on a substitute basis, and that she would be assigned to a different school. Garvey stated that he did not accept Filar as a cadre substitute teacher at Foreman after her displacement from the FTB list because he believed she was upset at being displaced, and that it might cause conflict for Filar to work at Foreman where she would work with people who were still on staff, or had not been displaced.

## B. Procedural History

On November 12, 1999, Filar filed a grievance with the School Board alleging that she was improperly displaced. On January 14, 2000, the Board denied Filar's grievance. Then, on July 16, 2004, Filar filed her Complaint in the United States District Court for the Northern District of Illinois, alleging substantive and retaliatory violations of Title VII, and violations of the Americans with Disabilities Act ("ADA"). On July 15, 2005, Filar filed her Amended Complaint. Then, on July 27, 2006, the Board filed its Motion for Summary Judgment. Filar filed her Response on September 22, 2006, and the Board Replied on October 13, 2006. The Board's Motion for Summary Judgment is fully briefed and before the court.

## II. DISCUSSION

## A. Standard of Review

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Heft v. Moore, 351 F.3d 278, 283 (7th Cir. 2003), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Vukadinovich v. Bd. of Sch. Tr.'s of North

Newton School, 278 F.3d 693, 699 (7th Cir. 2002).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Stinnett v. Iron Works Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. See FED. R. CIV. P. 56(c); see also Koszola v. Bd. of Educ. of City of Chicago, 385 F.3d 1104, 1108 (7th Cir. 2004). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 280 (1968); Spiegla v. Hall, 371 F.3d 928, 935 (7th Cir. 2004). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

When a party moves for summary judgment, the court must view the record and all inferences in a light most favorable to the non-moving party. Ameritech Benefit Plan Comm. v. Communication Workers of Am., 220 F.3d 814, 821 (7th Cir. 2000). However, the inferences construed in the non-moving party's favor must be drawn from specific facts identified in the record that support that party's position. See Szymanski v. Rite-Way Lawn Maintenance Co., 231 F.3d 360, 364 (7th Cir. 2000). Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hospital and Medical Center, 328 F.3d, 890, 892-93 (7th Cir. 2003) (citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

## B. Filar's Substantive Claims

### *1. The ADA*

The ADA forbids employers to discriminate against any "qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a); see Buie v. Quad/Graphics, Inc., 366 F.3d 496, 503 (7th Cir. 2004). The term "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); see also Byrne v. Avon Products, Inc., 328 F.3d 379, 380 (7th Cir. 2003). The plaintiff bears the burden of proof on the issue of whether he is a "qualified individual" under the ADA. See E.E.O.C. v. Yellow Freight System, Inc., 253 F.3d 943, 948 (7th Cir. 2001); Nowak v. St. Rita High Sch., 142 F.3d 999, 1003 (7th Cir. 1998); see also Arbaugh v. Y&H Corp., 126 S. Ct. 1235, 1244 (U.S. 2006).

Under the McDonnell Douglas method, a female plaintiff who alleges age discrimination must establish four elements: (1) that she is a member of a protected class; (2) that she is performing her job satisfactorily; (3) that she suffered an adverse employment action; and (4) that she was treated less favorably than at least one male colleague. Farrell v. Butler Univ., 421 F.3d 609, 613 (7th Cir. 2005) (citing Lim v. Trus. of Ind. Univ., 297 F.3d 575, 580 (7th Cir. 2002)).

Once the plaintiff has established a prima facie case, the burden shifts to the defendant to provide a legitimate, non discriminatory reason for the decision. Id. If the defendant satisfies its burden, the burden shifts back to the plaintiff to show that the defendant's explanation was pretextual. Id. To establish pretext, the plaintiff may show that the reasons given by the employer are factually baseless, were not the actual motivation for the decision, or were

insufficient to motivate the decision. Stewart v. Henderson, 207 F.3d 374, 376 (7th Cir. 2000). The failure to establish any one of the initial four elements defeats a plaintiff's discrimination claim. Id. With these principles in mind, we turn to the Board's Motion for Summary Judgment.

### 2. *Filar's ADA Claims*

Filar produces no direct evidence that the Board discriminated against her on the basis of her age, by removing her from the FTB list of teachers. Filar even admits in her deposition that Garvey, nor any Board member made comments to her in regards to hear age. See Filar Dep., at 101. As a result, Filar must proceed under the indirect method of proof.

The Board concedes that Filar belongs to a protected class, performed her job satisfactorily, and was subject to an adverse employment action as a result of her removal from an FTB teacher to a day-to-day substitute in the cadre. See Def.'s Mem. in Support of Summ. J., at 7, n.4. Therefore, the only issue remaining is whether Filar can establish that similarly situated employees were treated more favorably than herself.

### *a. Similarly Situated Employees*

A similarly situated employee "is one who is 'directly comparable to the plaintiff in all material aspects.'" Bio, 424 F.3d at 596 (quoting Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002)); see Walker, 410 F.3d at 396 (quoting Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000)). To determine whether two employees are similarly situated, the court must "look at all relevant factors, including whether the employees "(i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications–

6

provided the employer considered these latter factors in making the personnel decision.'" Bio, 424 F.3d at 596 (quoting Ajayi v. Aramark Bus. Servs., Inc., 336 F.3d 520, 532 (7th Cir. 2003)). The Seventh Circuit indicates that two employees are similarly situated if "they are directly comparable to [each other] in all material respects." Walker, 410 F.3d at 396 (quoting Patterson, 281 F.3d at 680).

Viewing all of these factors together, Filar cannot establish that any of her co-workers are similarly situated to her for purposes of the ADA, and therefore her case is doomed. See Stewart, 207 F.3d at 376; see also Racicot v. Wal-Mat Stores, Inc., 414 F.3d 675, 678 (7th Cir. 2005).

Filar compares herself to other teachers who were not classified as FTBs. Specifically, Filar claims that Piotr Monaco ("Monaco"), Tadeusz Krason ("Krason"), Helena Danielska ("Danielska") and Czeslawa Kolak ("Kolak") were similarly situated to herself, yet did not receive any adverse employment action. However, according to the Board rules, "appointed teachers do not compete with FTBs in terms of seniority." Def.'s Stmt. of Mat. Facts, ¶ 9; Ex. D. An appointed teacher who has been with the school for one day has priority over an FTB who has been teaching for any number of years. Therefore, appointed teachers are not "directly comparable to the plaintiff in all material aspects" to FTBs such as Filar. See Bio, 424 F.3d at 596. As a result, Filar cannot satisfy the similarly situated prong of her prima facie case.

### b. *Legitimate, Non-Discriminatory Reason for Filar's Displacement*

Even though Filar cannot satisfy the similarly situated prong of her prima facie case, with an abundance of caution, the court will proceed with the remainder of the indirect burden shifting analysis. See Gore, 416 F.3d at 592; Ballance, 424 F.3d at 617. "An employer need only

produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Rudin v. Lincoln Land Comm. Coll., 420 F.3d 712, 725 (7th Cir. 2005) (quoting Stockett v. Muncie Indiana Transit Sys., 221 F.3d 997, 1001 (7th Cir. 2000)).

Here, the Board has stated that Filar was displaced from an FTB to a day-to-day substitute in the cadre due to the decline in enrollment of students in the Polish program for the 1999-2000 school year. Garvey stated that in order to reach his decision as to which teacher to displace, he reviewed each teacher's performance record, and consulted with the human resources department whether such a displacement would be proper. As a result, the Board's reason for Filar's displacement as an FTB and transfer to the cadre was due to the decline in enrollment, and because she lacked seniority and proper certification for the open positions at the other Chicago Public Schools.

### c. Pretext Argument

Lastly, after the Board has established its legitimate reason for its action, Filar is required to show that the proffered reason is pretextual. See Stewart, 207 F.3d at 376; Herron v. DaimlerChrysler Corp., 388 F.3d 293, 301 (7th Cir. 2004). "The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." Stewart, 207 F.3d at 378 (quoting Jackson v. E.J. Brach Corp., 176 F.3d 971, 983 (7th Cir. 1999)). The court will not "sit as a superpersonnel department that reexamines an entity's business decision and reviews the propriety of the decision." Id. Moreover, it is not sufficient to prove that the reason was doubtful or mistaken. Crim v. Bd. of Educ. of Cairo Sch.

8

Dist. No. 1, 147 F.3d 535, 541 (7th Cir. 1998). Pretext does not mean simply a mistake, but instead a lie, "specifically a phony reason for some action." Id. (quoting Johnson v. City of Fort Wayne, 91 F.3d 922, 931 (7th Cir. 1996)). The only concern is whether the legitimate reason provided by the employer is in fact an honest one. See Stewart, 207 F.3d at 378.

Filar submits no evidence to suggest that the Board's proffered reasons for her termination was phoney, dishonest, or a lie. See Crim, 147 F.3d at 541. The Board has provided evidence, in the form of depositions and numbers of declining student enrollment, to justify its decision to displace Filar from an FTB to the cadre of day-to-day substitute teachers. Filar merely relies on her own personal belief that the Board removed her from the FTB list due to her age. However, the court finds this argument unpersuasive, as Danielska was 59 at the time Filar was terminated, and Alksnin was 61, while Filar was 69 years old at the time the suit was filed. Moreover, the oldest teacher on staff, Richard Lysakowski ("Lyskowski") was seven years older than Filar, yet was not displaced. In all, Filar is unable to demonstrate that the Board's legitimate, non-discriminatory reason for her displacement was based on her age, and as a result, her ADA claim must fail.

### 3. *Filar's Accommodation Claim*

The ADA provides that employers must make "reasonable accommodations" for a disabled employee's limitations, unless the employer can demonstrate that such an accommodation would impose an "undue hardship." 42 U.S.C. § 12112(b)(5)(A); Timmons v. General Motors Corp., 419 F.3d 1122, 1125 (7th Cir. 2006). A reasonable accommodation under the ADA includes "making existing facilities used by employees readily accessible to and usable

by individuals with disabilities." E.E.O.C. v. Sears Roebuck & Co., 417 F.3d 789, 803 (7th Cir. 2005); § 12112(b)(5)(A). It is up to the employer to "choose a reasonable accommodation; an employer is not required to provide the particular accommodation that an employee requests." Id. (quoting Jay v. Intermet Wagner, Inc., 233 F.3d 1014, 1017 (7th Cir. 2000)). At minimum, "the employer is obliged to provide an accommodation that effectively accommodates the disabled employee's limitations." Id.

In order for Filar to establish a claim for failure to accommodate, she must show that: (1) she is a qualified individual with a disability, (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability. Id. With respect to the third element, "the 'ADA requires that employer and employee engage in an interactive process to determine a reasonable accommodation.'" Id.

Here, Filar requested that she be assigned to a school with a minimum walking distance to public transportation. However, the ADA does not require that an employer furnish an employee with means of transportation to and from work, nor place an employee at a job location near public transportation. "With respect to the major life activity of working, the term substantially limits means significantly restricting the ability to perform either a class of jobs or a broad range of jobs. . . ." 29 C.F.R. § 1630.2(o)(1)(ii). Therefore, activities that fall outside the scope of employment, such as commuting to and from a job location is outside the responsibility of an employer under the ADA.

The court "ordinarily looks first to whether there is a genuine issue of material fact regarding the availability of a reasonable accommodation, and if it is clear that no reasonable

accommodation was available, we stop there." E.E.O.C., 417 F.3d at 805 (citing Ozlowski v. Henderson, 237 F.3d 837, 840 (7th Cir. 2001)). Here, Filar specifically requested that she be placed at a school close to public transportation because of her hip condition. Nowhere in her complaint does she allege that this hip condition substantially prohibits her from conducting her job as a teacher. Filar therefore, cannot be classified as a "qualified individual" who, "with or without reasonable accommodation, can perform the essential functions of the employment position." § 1211(8). Filar's proximity to public transportation does not effect the way in which she teaches Polish in her capacity as a substitute teacher. As a result, no genuine issue of material fact exists "regarding the availability of an accommodation" for Filar. See E.E.O.C., 417 at 797.

### 4. *Filar's Retaliation Claim*

Lastly, Filar claims that the Board retaliated against her after Filar filed her grievance with the School Board. In order to establish a prima facie case, for retaliatory discharge, the plaintiff must show that: (1) she engaged in protected conduct; (2) was subject to adverse employment action; (3) she was performing her job satisfactorily; and (4) no similarly situated employee who did not engage in the protected activity was subject to an adverse employment action. Buie v. Quad/Graphics, Inc., 366 F.3d 496, 503 (7th Cir. 2004) (quoting Rogers v. City of Chi., 320 F.3d 748, 754-55 (7th Cir. 2003)); see Hudson v. Chi. Transit Auth., 375 F.3d 552, 560 (7th Cir. 2004) (quoting Stone, 281 F.3d at 644); see also McDonnell Douglas Corp., 411 U.S. at 802. Failure to satisfy any one element of the prima facie case is fatal to an employee's retaliation claim. Hudson, 375 F.3d at 560 (citing Hilt-Dyson v. City of Chic., 282 F.3d 456, 465 (7th Cir. 2002)).

11

If the defendant presents evidence of a legitimate, non-discriminatory reason for the adverse employment action, then the defendant is entitled to summary judgment. Stone v. City of Indianapolis, 281 F.3d 640, 644 (7th Cir. 2002). A claim of retaliation under the ADA is assessed "in the same manner that we would evaluate a claim of retaliation under other employment statute, such as Title VII." Buie, 366 F.3d at 503.

It is undisputed that Filar engaged in protected conduct, had performed her job satisfactorily, and that she was subjected to an adverse employment action. However, just as in her substantive ADA claim, Filar is unable to establish that similarly situated employees were treated more favorably than herself. It has been established that Filar cannot point to any other FTB teachers who are directly comparable to her in every respective way, nor can she show that any similarly situated teacher was treated more favorably than herself. As a result, Filar cannot establish a prima facie of retaliation under the indirect, burden-shifting method.

However, with an abundance of caution, the court will analyze the remainder of Filar's retaliation claim. Assuming, arguendo, that Filar has established a prima facie case, the burden now shifts to the Board to articulate a legitimate, non-discriminatory reason for the termination. See Moser, 406 F.3d at 904. The Board has stated that it fired Filar as a result of decline in students at Foreman, and Filar's lack of certification to teach in other areas. Filar, on the other hand, offers no evidence to create a genuine issue of material fact as to this claim. See Supra, Sec. B(1).

Lastly, the burden shifts back to Filar to demonstrate that the Board's explanation is pretextual. See Dunn, 260 F.3d at 784. However, Filar is unable to proffer any evidence that

12

creates a genuine issue of material fact as to whether the Board's reason was "an honest one." See Stewart, 207 F.3d at 378. Absent any such evidence, Filar cannot satisfy this part of the indirect burden-shifting analysis, and summary judgment is proper as to the Board on Filar's retaliation claim.

### III. CONCLUSION

For the foregoing reasons, the court grants Defendant's Motion for Summary Judgment. IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 1-5-07